expressed uncertainty that the decedent intended any benefit to his widow at all.

Against the uniform background of authority, there is no reason to assume in the present case that the testator's expressed intent to minimize taxes for his widow and his estate would not cover her additional statutory share. She is therefore relieved of responsibility for estate and inheritance taxes and they will be paid by the remaining portion of the residuary estate.

MUNICIPAL INVESTIGATING COMMITTEE OF THE CITY OF BAYONNE, PLAINTIFF, v. ROBERT SERVELLO, DEFENDANT.

Superior Court of New Jersey
Law Division Hudson County

Decided April 2, 1984.

*Richard D. Shapiro* for plaintiff.

*Richard S. Hanlon* for defendant.

*Edward J. DeFazio* for Hudson County Prosecutor's Office.

HUMPHREYS, A.J.S.C.

"Best Cops Money Can Buy" was the headline of an article in the New York Daily News in March 1983. According to the article, organized crime controlled members of the Bayonne Police Department, including the Bayonne Public Safety Director.[1]

The City of Bayonne thereupon formed a municipal investigating committee to inquire into the charges in the Daily News article. *See N.J.S.A.* 40:48-25. In the course of its investigation the committee instituted this proceeding to compel Bayonne Police Officer Robert Servello to comply with the committee's subpoena *duces tecum.* That subpoena requires Servello to produce any photographs, tape recordings or other materials allegedly compiled by Servello during his surveillance of certain reputed members of organized crime.

The committee contends that Servello is the police officer mentioned in the Daily News article as conducting a surveillance of organized crime figures without authorization from his police superiors. According to the article, Servello did not inform his superiors because he believed that they were protecting the criminals.

Servello resists the subpoena on the grounds that requiring him to produce the materials would tend to incriminate him contrary to the Fifth Amendment of the United States Constitution. *See also N.J.S.A.* 2A:84A-19.

The major issue is whether a police officer has a Fifth Amendment privilege to refuse to produce materials which he has compiled in the course of an investigation not authorized by his superiors. That issue has not been previously addressed in

---

[1]This is a refinement of an oral opinion.

a reported opinion in this state. My ruling is that under the circumstances here, Servello's production of the materials would be a compelled testimonial act of incrimination. The subpoena cannot therefore be enforced.

## I

■ Under the *U.S. Const.,* Amend. V, a person cannot be compelled to incriminate himself. *See also N.J.S.A.* 2A:84A–19. However, a witness "may not make himself the final judge of the availability of the Fifth Amendment privilege and hence enough must appear to permit the court to pass upon it." *In re Addonizio,* 53 *N.J.* 107, 116 (1968). *See State v. Boiardo,* 82 *N.J.* 446, 463, n. 13 (1980).

In the present case the facts suggest that Servello conducted unauthorized surveillances of certain persons, did not inform his superiors and did not turn over to his superiors the photographs, tape recordings and other materials which he compiled from those surveillances. (The court's analysis of the underlying facts is omitted). If that is so, Servello has shown enough to fear potential incrimination since such conduct would expose him to a criminal charge of misconduct in office. *See N.J.S.A.* 2C:30–2. (Servello might also be subject to a charge of obstructing justice. *See N.J.S.A.* 2C:29–1 and –3a.)

The crime of official misconduct is committed when a public servant:

... with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit;

a. ... commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; or

b. ... knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office. [*N.J.S.A.* 2C:30–2]

Under the likely facts here Servello could be charged with official misconduct in that he: (1) knowingly conducted unauthorized surveillance; (see *N.J.S.A.* 2C:30–2a. above) or (2) knowingly refrained from reporting the surveillances and turn-

ing over to his police superiors the evidence garnered from the surveillances. (See *N.J.S.A.* 2C:30–2b. above).

■■ To convict Servello of official misconduct the State would also be required to prove that Servello acted "with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit." *N.J.S.A.* 2C:30–2. That might be difficult to prove, especially if the reason Servello did not report his investigation to his superiors was because in his opinion they were protecting the criminals he was investigating. Nevertheless, a witness does not have to disclose *all* of the elements of a crime before it can be said that the information he is compelled to produce may incriminate him. *See In re Addonizio, supra,* 53 *N.J.* at 116–117. By furnishing the materials required by the subpoena Servello would be admitting that he had committed acts which would be criminal if done with an improper purpose. He would therefore be compelled to furnish substantial evidence of guilt, thereby creating a reasonable apprehension of incrimination. *Ibid.*

## II

The committee contends that any material in the possession of Servello is the property of the Bayonne Police Department. The committee argues that under *Bellis v. U.S.*, 417 *U.S.* 85, 94 *S.Ct.* 2179, 40 *L.Ed.*2d 678 (1974), no one has a Fifth Amendment right to refuse to produce documents of an organization to which he belongs, even though production may incriminate him personally.

The United States Supreme Court has recently dealt with this issue in the case of *U.S. v. Doe,* 465 *U.S.* 605, 104 *S.Ct.* 1237, 79 L.Ed.2d 552 (1984). In that case a grand jury subpoenaed virtually all of the records of several businesses owned by a sole proprietor. The Supreme Court concluded that since defendant had prepared the business records voluntarily, the subpoena would not force him to restate, repeat or affirm the truth of their content. Hence no compulsory self-incrimination

was present and the contents of the documents were not constitutionally protected.

The Supreme Court found, however, that although the contents of the documents were not constitutionally protected, the *act* of producing the documents would amount to testimonial self-incrimination. The district court had found that compelling the respondent to produce the documents would compel him to admit that the records existed, that they were in his possession and that they were authentic. The district court held that such "communications" if made under compulsion to a court decree would violate defendant's Fifth Amendment privilege. The United States Supreme Court decided that it would not disturb the district court's above factual findings, and therefore ruled that the documents at issue could not be subpoenaed.

The reasoning and holding of the Supreme Court in *Doe* applies here. This is not a case where an individual is holding documents in a representative capacity for an organization. *See Bellis v. U.S., supra.* Servello is not, for example, a property clerk who would be the lawful custodian of police records or evidence. Servello is not, as in *Bellis*, a partner seeking to withhold production of a partnership's financial records. The facts here indicate that Servello may be in possession of materials which may have been a crime to compile and not promptly turn over to his superiors. As in *Doe*, if Servello were compelled to produce this material, then that compelled act would have an incriminating effect without regard to the content of the materials. The compelled production of the materials would lead to conclusions that they did exist, that he did compile them, that they were "authentic" and that he had not disclosed them to his superiors as required by his duty as a police officer. In short, the mere fact that he does possess or control them is incriminating. Here, as in *Doe*, "the act of producing the documents at issue in this case is privileged." *Doe, supra*, —— *U.S.* at ——, 104 *S.Ct.* at 1245, 79 *L.Ed.*2d at 563.

The case of *Fisher v. U.S.*, 425 *U.S.* 391, 96 *S.Ct.* 1569, 48 *L.Ed.*2d 39 (1976), relied upon by plaintiff, is distinguishable not only on its facts but also in the language and holding of the Court. *See also State v. Stroger*, 97 *N.J.* 391, 406 (1984) and *In re Grand Jury Matter Gilbert J. Brown*, —— *F.*2d —— (3 Cir.1984). In *Fisher* the Court required a taxpayer to produce work papers of his accountant. The taxpayer resisted contending that the work papers would tend to incriminate him. The Court in requiring production said:

> ... this Court has also time and again allowed subpeonas against the custodian of corporate documents or those belonging to other collective entities such as union, partnerships and those of bankrupt businesses over claims that the documents will incriminate the custodian *despite the fact that producing the documents tacitly admits their existence and their location in the hands of their possessor.* [425 *U.S.* at 411, 96 *S.Ct.* at 1581, 48 *L.Ed.*2d at 56; emphasis supplied.]

However, the Court also said in *Fisher:*

> The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena.... [citation omitted] The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both 'testimonial' and 'incriminating' for the purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof. In light of the records now before us, we are confident that however incriminating the contents of the accountant's workpapers might be, *the act of producing them—the only things which the taxpayer is compelled to do—would not itself involve testimonial self-incrimination.* [*Id.* at 410–411, 96 *S.Ct.* at 1581, 48 *L.Ed.*2d at 56; emphasis supplied]

The Court in *Fisher* pointed out further that:

> ... [t]he Government is in no way relying on the 'truth-telling' of the taxpayer to prove the existence of or his access to the documents. [citation omitted] The *existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers.* Under these circumstances by enforcement of the summons 'no constitutional rights are touched.' [*Id.* at 411, 96 *S.Ct.* at 1581, 48 *L.Ed.*2d at 56; emphasis supplied]

Here, of course, the situation is quite different. Servello has not admitted that he has the materials, or ever did have them, or ever compiled them. Existence and location of the materials are not "foregone conclusions." On the contrary, they are important and potentially incriminating facts. If Servello is forced to produce the materials he will be admitting their existence. He will be adding much, not "little or nothing" to the State's incriminating information about him.

Requiring Servello to comply with the subpoena in this case would be similar to the example given by Chief Justice Weintraub in *Addonizio*. The Chief Justice pointed out that a subpoena cannot be used to obtain things from a suspect which should be seized from that suspect under a search warrant. The Chief Justice said, "for example, he could not be subpoenaed to produce the gun or the loot, no matter how probable the cause, for the Fifth [Amendment] protects the individual from coercion upon him to come forward with anything that can incriminate him." 53 *N.J.* at 129. The enforcement of this subpoena would compel Servello to produce evidence of the allegedly unauthorized and unreported surveillances, which would be evidence of the crime itself, in a real sense the gun or the loot.

The Fifth Amendment privilege against self-incrimination has a long and cherished history. It is an essential and honored part of our panoply of human rights and freedoms. As was said by Justice Brennan in his concurring opinion in *Fisher*, "It has been repeatedly decided that the [Fifth Amendment] should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by [it], by imperceptible practice of courts or by well-intentioned but mistakenly over-zealous executive officers." 425 *U.S.* at 417, 96 *S.Ct.* at 1584, 48 *L.Ed.*2d at 60.

The right not to be compelled by government to incriminate oneself is a right guaranteed to every American by the United States Constitution. Our courts must uphold and de-

fend the proper exercise of that right. The rightful interest of the Municipal Investigating Committee of Bayonne in uncovering corruption in its police department cannot prevail against the constitutional rights guaranteed to all our citizens, including police officers. In swearing to uphold and defend the U.S. Constitution, a police officer does not thereby lose his protection.

### III

Plaintiff contends that the court should require defendant to submit the subpoenaed material to the court for an *in camera* review. This is an accepted procedure when the court is uncertain whether the subpoenaed material would be incriminating. *See In re Addonizio, supra*, 53 *N.J.* at 116. Here, however, enough has been presented to show that Servello has a reasonable apprehension of incrimination. *See* Point I, supra. Thus, *in camera* review is not necessary.

Moreover, *in camera* review would not serve any purpose because in this case the *contents* of the surveillance materials will probably not be incriminating to the defendant. The incriminating aspect is the existence and authenticity of the materials, and the conclusions that logically follow therefrom. In other words, assume Servello does have in his possession or under his control photographs, tape recordings, *etc.*, compiled as the result of unauthorized and unreported surveillances and not turned over to his superiors. The very fact that those items exist and are in his possession or control is incriminating, not what is depicted on the photographs or recorded on the tapes.

### IV

Plaintiff contends that the Public Employees Statute, *N.J.S.A.* 2A:81–17.2a *et seq.* requires defendant to respond to the subpoena *duces tecum*. That statute requires a public employee, despite any claim of self-incrimination, to appear and

testify before any "court, grand jury or the State Commission of Investigation" on matters directly related to the conduct of his office, position or employment. *N.J.S.A.* 2A:81–17.2a1. Such testimony, however, and any evidence derived therefrom cannot be used against a public employee in a subsequent criminal proceeding under the laws of New Jersey except for perjury or false swearing committed while testifying. *N.J.S.A.* 2A:81–17.2a2. In other words the employee receives what is commonly called "use immunity."

The statute by its terms, applies only to a "court, grand jury or the State Commission of Investigation." However, in *Banca v. Town of Phillipsburg*, 181 *N.J.Super.* 109 (App.Div.1981), the statute was applied to police departmental investigations. Hence plaintiff contends the statute applies here.

Assuming that the statute does apply, defendant still cannot be required to testify unless he receives use immunity. Only the Attorney General or county prosecutor may offer a witness use immunity. *See N.J.S.A.* 2A:81–17.3 and *Whippany Paper v. Alfano*, 176 *N.J.Super.* 363 (App.Div.1980). Unless and until the prosecutor or Attorney General so offers, the Public Employees Statute does not require a person to testify if that testimony may incriminate him.

## V

To summarize, defendant has shown a sufficient basis for the assertion of the Fifth Amendment. Compelling him to respond to the subpoena in this case would involve a compelled testimonial act of incrimination and would therefore violate the *U.S. Const.*, Amend. V. *See also N.J.S.A.* 2A:84A–19. *In camera* review by the court of the subpoenaed material would not serve any purpose. The Public Employees Act, *N.J.S.A.* 2A:81–17.2a *et seq.* does not require defendant to testify since use immunity has not been afforded him.

The court will therefore not enforce the subpoena except with respect to copies of photographs, tape recordings, *etc.*, the

originals of which were seasonably turned over to the Bayonne Police Department or to another law enforcement agency. Under those circumstances the defendant would very likely not have committed any criminal act. Consequently, such copies should be produced in response to plaintiff's subpoena *duces tecum.* The same would also apply if defendant in compiling such material was acting by or with the authority of another law enforcement agency. However, prior to producing such materials, the other law enforcement agency should be notified in the event that they wish to object to production of the copies retained by defendant.