59 A.3d 1104

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
MYLON KELSEY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 2, 2011—Decided February 13, 2013.

450

Before Judges FUENTES, GRAVES, and HARRIS.

*Stephanie A. Katz,* Assistant Prosecutor, argued the cause for appellant (*Joseph L. Bocchini, Jr.,* Mercer County Prosecutor, attorney; *Ms. Katz,* of counsel and on the brief).

*Scott A. Krasny* argued the cause for respondent (*Furlong and Krasny,* attorneys; *Mr. Krasny,* on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

By leave granted, the State appeals from the order of the trial court denying its application to compel defendant Mylon Kelsey, a police officer in the City of Trenton, to produce a flashlight that may or may not be in defendant's possession. The State claims it has probable cause to believe the flashlight may have been used by defendant illegally as a weapon, when defendant took part in a street brawl, during which at least one person sustained serious bodily injury from allegedly being hit with the flashlight. The trial court initially granted the State's ex parte motion to compel defendant to produce the flashlight. On defendant's motion for reconsideration, the court stayed the execution of its order, ordered briefing on the issue, and scheduled oral argument on the matter.

After hearing arguments from both sides, the court granted defendant's motion for reconsideration and vacated its previous order compelling defendant to produce the flashlight. Relying primarily on *Bayonne Municipal Investigating Committee v. Servello,* 200 *N.J.Super.* 413, 491 *A.*2d 779 (Law Div.1984), the court held that compelling defendant to turn over the flashlight under these circumstances would violate defendant's right against self-incrimination. The court concluded that such an order would be

"comparable to having [d]efendant make the prosecution's case against himself." We agree with the trial court and affirm.

I

At all times relevant to this case, defendant was a Trenton police officer. At approximately 1:00 a.m. on January 17, 2011, the police departments of both the City of Trenton and Hamilton Township received several 911 calls reporting an altercation outside the TriNaNog Bar, located on Hamilton Avenue in Trenton. According to the 911 dispatcher, one caller described the scene as "a big fight" involving as many as twelve people using bats as weapons; another caller "characterized the situation 'as a terrible, terrible fight,'" in which one man was "'on the ground and [could not] get up.'" That same caller indicated that one of the men taking part in the fight was using a flashlight as a weapon.

Hamilton Township police officers who responded to the scene did not arrest or charge anyone allegedly connected to the altercation. At noon the following day, the father of one the victims contacted the Trenton Police Department's Internal Affairs Bureau and told Detective Sergeant Timothy Thomas that some of the participants in the fight were off-duty Trenton police officers who were patrons of the bar. At approximately 3:00 p.m. that same day, Trenton Detective Manuel A. Montez and Thomas were assigned to follow-up on this information. Montez and Thomas interviewed and photographed four alleged victims and two other individuals whom the officers described as "eyewitnesses." Based on the information gathered from these interviews, the Trenton Police Department decided to initiate a formal internal affairs investigation.[1]

On January 18, 2011, officers from the Trenton Internal Affairs Bureau took formal written statements from the four victims and two eyewitnesses. Four of the interviewees described defendant's

---

[1] The Hamilton Township Police Department did not conduct an independent internal affairs investigation of the incident.

vehicle as the car from which an African–American man—defendant is African–American—removed a black flashlight to hit several people involved in the fight. Defendant's photograph was thereafter selected by these witnesses as depicting the man who had removed the flashlight from the car. Several witnesses also saw defendant: (1) leaving the scene of the brawl; (2) retrieving the flashlight from his vehicle; (3) using the flashlight as a weapon to strike people involved in the altercation; and (4) return the flashlight to his vehicle. Defendant allegedly hit two of the victims in the head with the flashlight, causing contusions.

On January 19, 2011, on the State's application, the trial court issued a warrant to search defendant's vehicle. The vehicle was described as a gold-colored, 2007 Infiniti FX3. The officers who searched the car found an empty flashlight box in the cargo area. The State believes, by way of inference, that the box contained the flashlight used by defendant in the altercation. The box is for a Streamlight LED flashlight, model SL–20X. The actual flashlight has not been found.

On this record, the trial court initially granted the State's ex parte application to compel defendant to turn over the flashlight, if he had it in his possession. Upon defendant's motion for reconsideration, the court vacated its prior order, holding that to compel defendant to turn over the flashlight under these circumstances would violate defendant's right against self-incrimination. The following excerpt from the court's memorandum of opinion reveals the court's reasoning:

> The Court finds Defendant is not required to provide the State with the aforementioned flashlight. The flashlight in this case is distinguishable from the evidence New Jersey Courts have compelled from Defendants in the past. Evidence such as voice tests, blood samples, hair samples and handwriting is used primarily for identification or for purposes of comparison. Compelling Defendant to turn over the flashlight is comparable to having Defendant make the prosecution's case against himself. The act of actually turning over the flashlight is inherently incriminating. Thus, Defendant is constitutionally protected from complying with such request.

## II

The State now appeals, raising the following arguments:

*POINT I*

THE DEFENDANT SHOULD BE ORDERED TO PRODUCE THE STREAM-LIGHT LED FLASHLIGHT MODEL AS THE PRODUCTION IS NON–TESTI-MONIAL.

*POINT II*

THE STATE SEEKS TO USE THE LEAST INTRUSIVE MEANS POSSIBLE TO OBTAIN THE FLASHLIGHT.

*POINT III*

THE STATE HAS A SUPERIOR INTEREST IN THE FLASHLIGHT TO THAT OF THE DEFENDANT.

*POINT IV*

ANY PROC[EDU]RAL ERRORS BROUGHT ABOUT BY THE ENTRY OF AN EX PARTE ORDER ARE MOOT AS CURED BY THE SUBSEQUENT ORAL ARGUMENT.

We reject the State's argument reflected in Point I substantially for the reasons expressed by the trial judge. The remaining arguments are rendered moot or irrelevant as a consequence of the underlying principles that govern our analysis. We start our discussion by reaffirming a rudimentary, yet fundamental, principle of our system of criminal justice.

■ The right against self-incrimination is found in the Bill of Rights, under the Fifth Amendment to the United States Constitution, *U.S. Const.* amend. V., as made applicable to the states through the Fourteenth Amendment, *Malloy v. Hogan,* 378 *U.S.* 1, 8, 84 *S.Ct.* 1489, 1493, 12 *L.Ed.*2d 653, 659 (1964). Our State Constitution does not contain a similar provision; however, the privilege against self-incrimination " 'is firmly established as part of the common law of New Jersey and has been incorporated into our Rules of Evidence.' " *State v. Hartley,* 103 *N.J.* 252, 260, 511 *A.*2d 80 (1986) (quoting *In re Martin,* 90 *N.J.* 295, 331, 447 *A.*2d 1290 (1982)).

■ *N.J.R.E.* 503 provides, in relevant part, as follows:

[E]very natural person has a right to refuse to disclose in an action or to a police officer or other official any matter that will incriminate him or expose him to a penalty or a forfeiture of his estate, except that under this rule:

(a) no person has the privilege to refuse to submit to examination for the purpose of discovering or recording his corporal features and other identifying characteristics or his physical or mental condition;

(b) no person has the privilege to refuse to obey an order made by a court to produce for use as evidence or otherwise a document, chattel or other thing under his control if some other person or a corporation or other association has a superior right to the possession of the thing ordered to be produced;

(c) no person has a privilege to refuse to disclose any matter which the statutes or regulations governing his office, activity, occupation, profession or calling, or governing the corporation or association of which he is an officer, agent or employee, require him to record or report or disclose except to the extent that such statutes or regulations provide that the matter to be recorded, reported or disclosed shall be privileged or confidential;

(d) subject to the same limitations on evidence affecting credibility as apply to any other witness, the accused in a criminal action or a party in a civil action who voluntarily testifies in the action upon the merits does not have the privilege to refuse to disclose in that action, any matter relevant to any issue therein.

*N.J.R.E.* 502 defines "incrimination" as identically set forth in *N.J.S.A.* 2A:84A–18:

Within the meaning of this article, a matter will incriminate (a) if it constitutes an element of a crime against this State, or another State or the United States, or (b) is a circumstance which with other circumstances would be a basis for a reasonable inference of the commission of such a crime, or (c) is a clue to the discovery of a matter which is within clauses (a) or (b) above; provided, a matter will not be held to incriminate if it clearly appears that the witness has no reasonable cause to apprehend a criminal prosecution. In determining whether a matter is incriminating under clauses (a), (b) or (c) and whether a criminal prosecution is to be apprehended, other matters in evidence, or disclosed in argument, the implications of the question, the setting in which it is asked, the applicable statute of limitations and all other factors, shall be taken into consideration.

In support of its argument, the State cites a long line of cases that have upheld, upon a finding of probable cause, the involuntary taking of physical evidence from a defendant's person or related to a defendant's physical action: *Rawlings v. Police Dep't of Jersey City*, 133 *N.J.* 182, 194, 627 *A.*2d 602 (1993) (permitting the taking of urine samples during drug testing post-arrest of a police officer for suspicion of drug use); *State v. Dyal*, 97 *N.J.* 229, 238, 478 *A.*2d 390 (1984) (blood samples taken incident to arrest are emergent and therefore constitutional in order to identify intoxication); *State v. Andretta*, 61 *N.J.* 544, 551, 296 *A.*2d 644 (1972) (permitting the taking of voiceprint exemplars); *State v. Bern-*

*hardt,* 245 *N.J.Super.* 210, 216, 584 *A.*2d 854 (App.Div.) (refusing to submit to a breathalyzer test is not protected), *certif. denied,* 126 *N.J.* 323, 598 *A.*2d 883 (1991); *State v. Burke,* 172 *N.J.Super.* 555, 557–58, 412 *A.*2d 1324 (App.Div.1980) (permitting the taking of hair samples and saliva from a defendant accused of rape); *State v. Mingo,* 143 *N.J.Super.* 411, 413, 363 *A.*2d 369 (App.Div. 1976) (handwriting exemplars are non-testimonial and not protected under the privilege), *aff'd,* 77 *N.J.* 576, 392 *A.*2d 590 (1978); *State v. Snyder,* 190 *N.J.Super.* 626, 630 n. 4, 464 *A.*2d 1209 (Law Div.1983) (permitting the use of a trace metal detection technique to check arrested defendants' hands for metal flecks resulting from contact with a gun).

The State's line of reasoning fails to appreciate that none of the cases cited have compelled defendants to divulge the location of incriminating physical evidence, or otherwise incriminate themselves by the mere act of responding to the question itself. As Chief Justice Weintraub aptly noted forty-five years ago, the right against self-incrimination protects a defendant from being "subpoenaed to produce the gun or the loot, no matter how probable the cause, for the Fifth [Amendment] protects the individual from coercion upon him to come forward with anything that can incriminate him." *In re Addonizio,* 53 *N.J.* 107, 129, 248 *A.*2d 531 (1968).[2]

Here, we are satisfied that, under *Addonizio,* the State does not have the right to compel defendant to incriminate himself by producing the flashlight at issue.

Affirmed.

---

[2] Following *Addonizio,* Judge Humphreys—then the Assignment Judge of the Hudson County vicinage—reached a similar conclusion in declining to enforce a subpoena that would have compelled a local police officer to produce photographs, tape recordings, or other materials allegedly compiled by the officer during his surveillance of reputed members of organized crime. *Servello, supra,* 200 *N.J.Super.* at 423–24, 491 *A.*2d 779.