# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4509-18T2

IN RE MATTER OF STATE'S
APPLICATION TO COMPEL
M.S. TO PROVIDE PASSCODE

_____

Argued October 29, 2019 – Decided September 11, 2020

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County.

Anthony J. Iacullo argued the cause for appellant M.S. (Iacullo Martino, LLC, attorneys; Anthony J. Iacullo, and Joshua H. Reinitz, of counsel and on the briefs).

Ali Y. Ozbek, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Camelia M. Valdes, Passaic County Prosecutor, attorney; Ali Y. Ozbek, of counsel and on the briefs).

PER CURIAM

This appeal arises out of an investigation of a potentially illegal sexual relationship between an adult man, M.S. (Max), and a minor female, S.G.

(Sally).[1]  Max's cell phone was seized and the State moved to compel Max to provide the passcode to access information believed to be stored in the cell phone.  Max appeals from a June 13, 2019 order requiring him to provide the passcode.  Consistent with our Supreme Court's recent decision in State v. Andrews, ___ N.J. ___, ___ (2020) (slip op. at 40), we affirm, but remand for entry of an order limiting what the State can copy and use from the cell phone to communications, videos, and photographs exchanged between Max and Sally.

I.

We discern the facts from the limited record developed on the motion to compel.  Max has not yet been charged with or indicted for a crime.  Accordingly, we accept the facts as they are relevant to the issue of whether the State has the right to compel Max to produce the passcode to his cell phone.

Sally has struggled with depression and has attempted suicide on several occasions.  When she was sixteen, an emergency medical technician (EMT) squad rendered assistance to Sally after one of her suicide attempts.  Thereafter, Sally befriended some of the members of the EMT squad, including Max.

---

[1] To protect privacy interests, we use initials and fictitious names.  See R. 1:38-3(c)(9), (d)(9), (d)(11).

At that time, Max was thirty-two years old, worked as a police officer, and volunteered with the EMT squad. Max and Sally began communicating with each other using social media platforms such as Instagram and Snapchat. While Sally was a minor, the communications allegedly became sexual in nature. Based on information provided by Sally, the State believes that Max and Sally sent each other pictures and videos of themselves naked.

Snapchat videos and pictures are designed to delete after viewing unless the receiving party takes a screenshot. When a receiving party takes a screenshot, the sending party receives a notification. Sally gave the State consent to search her cell phone and the State observed screenshots of a Snapchat video sent to Sally by Max which, according to Sally, displayed Max's penis. The State also represents that it discovered images of Max and Sally kissing.

Sally has also told the State that in December 2017, when she was seventeen years old, she and Max engaged in sexual intercourse multiple times. Sally ended the relationship in April 2018. Thereafter, Sally and her aunt, who is her guardian, reported the relationship to the police and Sally obtained a temporary restraining order (TRO) against Max.

On April 24, 2018, the police served the TRO on Max and seized his cell phone, along with firearms and a firearm purchase identification card. Relying on the information provided by Sally, the State believes Max's cell phone holds evidence of criminal activity, including the crime of endangering the welfare of a child, N.J.S.A. 2C:24(a)(1).

On May 4, 2018, the State applied for and obtained a search warrant and a data communication warrant to access the information in Max's cell phone. When the State attempted to access the cell phone, however, it discovered that the phone was locked, and a passcode was needed to open the phone.

Max declined to provide the passcode voluntarily. Consequently, in January 2019, the State moved to compel Max to provide his passcode.

The trial court heard oral argument on that motion on May 10 and June 3, 2019. On June 13, 2019, the court granted the State's application and provided an oral decision on the record. That same day, the trial court memorialized its ruling in an order.

In granting the State's application, the trial court relied on our decision in State v. Andrews, 457 N.J. Super. 14, 18 (App. Div. 2018), which affirmed an order compelling a defendant to disclose the passcodes to his two iPhones. The

A-4509-18T2

trial court found that the State had strong evidence that Max's phone contained evidence that he had endangered the welfare of a child.

The trial court noted that Max did not dispute that the cell phone belonged to him. The court also observed that any challenge to the seizure of the phone could be made in a later motion. Consequently, the trial court ruled that Max's Fifth Amendment rights would not be violated by compelling the passcode's production because the State established the requirements under the foregone conclusion doctrine. Under that doctrine, even testimonial conduct will not be protected by the Fifth Amendment if the State can demonstrate it already knows the information the act will reveal. Thus, the trial court ordered Max to provide the State with the passcode. The trial court also ruled that there was no need for an in camera review. Finally, the trial court denied Max's request for a stay of its ruling pending the appeal to our Supreme Court of the decision in Andrews.

Max appealed. He also sought a stay from us, but we denied that request. The matter was thereafter fully briefed, and we heard oral argument. Before us, both parties agreed that the outcome of this appeal depended on the Supreme Court's ruling in Andrews. Accordingly, we waited to issue our opinion until after the Supreme Court issued its decision in Andrews on August 10, 2020. We

5

then accorded the parties the opportunity to submit supplemental briefs on the effect of the Court's ruling in <u>Andrews</u>.

II.

On appeal, Max makes one substantive argument, which he articulates as follows:

> THE FOREGONE CONCLUSION EXCEPTION IS NOT PROPERLY APPLIED IN THE PRESENT CONTEXT AND THE MOTION TO COMPEL WAS IMPROPERLY GRANTED.[2]

Max contends that compelling him to disclose his passcode would violate his right against self-incrimination, which is protected by the Fifth Amendment of the United States Constitution and New Jersey's common law and statutory protections against self-incrimination. N.J.S.A. 2A:84A-18 &19; <u>see also</u> N.J.R.E. 503.

In <u>Andrews</u>, our Supreme Court addressed whether the Fifth Amendment to the United States Constitution or New Jersey's statutory and common law provide protection against compelling individuals to disclose passcodes to their cell phones. ___ N.J. ___ (slip op. at 17, 42, 44). The Court held that no such protection was available to Andrews. We reach a similar conclusion here.

---

[2] Max also argued for a stay pending the Supreme Court's decision in <u>Andrews</u>. That issue is now moot.

A-4509-18T2

A.     The Fifth Amendment

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V.  That right against self-incrimination "applies only when the accused is compelled to make a [t]estimonial [c]ommunication that is incriminating."  Fisher v. United States, 425 U.S. 391, 408 (1976); Andrews, ___ N.J. ___ (slip op. at 17).  Testimonial communication can take different forms.  Schmerber v. California, 384 U.S. 757, 763-64 (1966).  To be protected by the Fifth Amendment, the communication must "imply assertions of fact." Doe v. United States, 487 U.S. 201, 209 (1988).

Even when the communication is testimonial, there is an exception to Fifth Amendment protection when the act of production is of minimal testimonial value because the information conveyed is a foregone conclusion.  Andrews, ___ N.J. ___ (slip op. at 19).  For the government to establish the foregone conclusion exception, it must demonstrate "it already knows the information that act will reveal."  Id. at 26.  "[I]n other words, the existence of the requested documents [or information], their authenticity, and the defendant's possession of and control over them – are a 'foregone conclusion.'" Ibid.

A-4509-18T2

In Andrews, our Supreme Court held that compelling a cell phone's passcode is a testimonial act of production. Id. at 37. The Court also held that "if the foregone conclusion exception applies, production of passcodes may still be compelled." Ibid. The Court then held that "the foregone conclusion test applied to the production of the passcodes themselves, rather than the phone's contents." Ibid. Accordingly, "the proper focus here is on the Fifth Amendment and . . . the Fourth Amendment's privacy protections should not factor into analysis of the Fifth Amendment's applicability." Id. at 39. In that regard, the Court explained:

> In sum, we view the compelled act of production in this case to be that of producing the passcodes. Although that act of production is testimonial, we note that passcodes are a series of characters without independent evidentiary significance and are therefore, of "minimal testimonial value" – their value is limited to communicating the knowledge of the passcodes. Thus, although the act of producing the code is presumptively protected by the Fifth Amendment, its testimonial value and constitutional protection may be overcome if the passcode's existence, possession, and authenticity are foregone conclusions.
>
> [Id. at 39-40 (internal citation omitted).]

Applying the holdings in Andrews to the facts in this case, the Fifth Amendment issue turns on whether the production of Max's passcode falls

8

within the foregone conclusion exception. The record establishes that the exception applies.

The cell phone belonged to Max. That issue is undisputed. The State has also established that the passcode exists because, when it attempted to open the phone, it was locked and required a passcode to open it. Finally, to the extent that authentication is an issue in this context, the passcode "self-authenticate[s]" by providing access to the cell phone's contents. Id. at 40-41 (citations omitted).

Importantly, as in Andrews, the State is not fishing for information from Max. The State produced substantial information from its investigation that indicates that Max's cell phone contains relevant evidence. That information included the police report documenting what Sally and her aunt told the police, Sally's handwritten statement, and, perhaps most importantly, a review of Sally's phone. Sally's phone included two screenshots showing a man's erect penis. Sally informed the State that Max sent her those pictures depicting his penis.

B. New Jersey Law

In Andrews, the Supreme Court also held that New Jersey's statutory protection against self-incrimination does not protect cell phone passcodes "where ownership and control of [the] electronic device is not in dispute." Id.

at 43 (citations omitted). As already noted, Max does not dispute ownership or control of the phone.

In addition, the Court in Andrews noted that New Jersey's common law privilege against self-incrimination incorporates privacy considerations. Id. at 46. In Andrews, the defendant did not challenge the seizure of his phone, which had been sanctioned by warrants. Accordingly, the Court held that the privacy considerations under the common law privilege against self-incrimination had been addressed by the search warrants. Ibid.

Here, Max has reserved his right to challenge the seizure of his cell phone. Nevertheless, we conclude that Max's New Jersey common law privilege against self-incrimination will not be violated if he is compelled to produce his passcode. As already noted, the State has information from Sally concerning the exchange of sexually explicit photographs and videos and it is looking for that specific information on Max's cell phone. Accordingly, the record here establishes that the State is looking for particular information, and the production of a passcode allowing access to such information does not violate Max's privacy interests protected by New Jersey's common law self-incrimination privilege.

A-4509-18T2

In that regard, we note that the majority of the Court in <u>Andrews</u> stated that it would have compelled production of the passcodes even if it viewed the access analysis to encompass the phone's contents. <u>Id.</u> at 41. In other words, the evidence in the record in <u>Andrews</u> showed that the State knew the phones contained "particular content." <u>Ibid.</u>

Our ruling under New Jersey's common law privilege against self-incrimination will not preclude Max from filing a motion to suppress the seizure of his cell phone. We have already noted that the trial court stated that Max could raise such a Fourth Amendment issue in a later motion. We agree with that statement. Nevertheless, there is sufficient evidence in the current record to overcome Max's New Jersey common law self-incrimination privilege.

Finally, we are compelled to remand to narrow the scope of the order. The current order directs Max to turn over the passcode but does not limit the State's search of Max's cell phone or the use of what is discovered. The State has demonstrated its right to access Max's cell phone for particularized information. Specifically, the State has demonstrated the foregone conclusion concerning communications, videos, and photographs exchanged between Max and Sally. The order granting the State access to the passcode needs to be narrowed to state

that the State can only copy and use communications, videos, and photographs exchanged between Max and Sally.

Affirmed as modified and remanded for entry of a new order consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION