**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1942
_____

AUDREY GORGONZOLA; GAIL G. HUDSON;
KATHRYN DAANE; DOLORES VASSALLUZZO; MICHELLE RAE SMITH;
THOMAS C. MARCIN,
on behalf of themselves and other individuals similarly situated;

v.

DIRECTOR UNITED STATES OFFICE OF PERSONNEL MANAGEMENT,
Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-10-cv-01768)
District Judge: Hon. Mark R. Hornak
_____

Argued January 23, 2023
_____

Before: SHWARTZ, BIBAS, and FUENTES, Circuit Judges.

(Filed: February 2, 2023)
_____

OPINION[*]
_____

Stephanie R. Marcus [ARGUED]

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Charles W. Scarborough
United States Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

  Counsel for Appellant

Jonathan K. Cohn
Maureen Davidson-Welling [ARGUED]
John E. Stember
Stember Cohn & Davidson-Welling
425 First Avenue, 7th Floor
The Hartley Rose Building
Pittsburgh, PA 15219

Timothy P. O'Brien
O'Brien Coleman & Wright
116 Boulevard of the Allies
Pittsburgh, PA 15222

  Counsel for Appellees


SHWARTZ, <u>Circuit Judge</u>.

The District Court certified a class of retired part-time nurses who worked for the Veterans Administration ("VA") and are eligible for enhanced retirement benefits. The Court issued a notice to the class using language that the class representatives and the United States Office of Personnel Management ("OPM") jointly proposed that notified the class of the benefits. The language also set forth various actions OPM represented that it would take for each class member, including reviewing the files, recalculating the benefits, and tendering payments if warranted. When the class representatives learned that OPM disavowed these representations, they filed a motion under the All Writs Act

seeking an order directing OPM to fulfill its representations. The Court granted the motion and directed OPM to take no actions impeding the fulfillment of the promises it made in the notices. Because the District Court has jurisdiction over the case and the authority to issue the order, we will affirm in part and dismiss in part.

I

In 2002, Congress passed the Department of Veterans Affairs Health Care Programs Enhancement Act (the "Enhancement Act"), which changed the way OPM measures service time—a key factor in calculating retirement annuities for VA nurses. Gorgonzola v. Dir. U.S. OPM, 782 F. App'x 207, 209 (3d Cir. 2019). After unrelated litigation, OPM agreed to apply the Enhancement Act retroactively to nurses who retired before 2002 and awarded increased benefits to nurses who submitted claims for them. Id. OPM, however, took no action concerning eligible nurses who did not submit claims. Id. Thereafter,

> five retired VA nurses filed a class action lawsuit in [federal district court] against the Director of OPM on behalf of all VA nurses who had worked part time before April 7, 1986, but retired before Congress passed the Enhancement Act. They alleged that OPM, by only recalculating the annuities of those nurses who submitted . . . claim[s], violated the Equal Protection and Due Process Clauses. The nurses requested that the District Court, among other things, [issue a permanent injunction, directing OPM to identify each member of the Class, recalculate her pension in accordance with the Enhancement Act, pay any benefits past due from the date of retirement, and adjust her monthly benefit going forward]. . . .
>
> [OPM initially stated that it could not identify and notify all nurses eligible for a recalculation because its computerized annuity roll did not contain employee-service history.] Then, as the litigation advanced, OPM claimed that it realized that there was another database that could help it identify

nurses entitled to a recalculation. . . .

The plaintiffs then filed [the First Amended Complaint ("FAC")], and OPM moved to dismiss for lack of jurisdiction. OPM argued mainly that the Civil Service Reform Act ("CSRA") created an exclusive remedial scheme for federal benefits claims: initial adjudication by OPM, with an appeal available to the [Merit Systems Protection Board ("MSPB")], and subsequent judicial review available only in the Court of Appeals for the Federal Circuit.

The District Court denied OPM's motion [in part], . . . conclud[ing] that it did "not have jurisdiction to order OPM to recalculate any individual's payment," as "that relief can only be sought through the CSRA." Wigton v. Berry, 949 F. Supp. 2d 616, 636-37 (W.D. Pa. 2013). But it explained that it did have jurisdiction "to entertain a challenge to an undisclosed, systematic determination of OPM to fail to notify individuals of" their eligibility for certain benefits, an eligibility that OPM "unequivocally concedes" is statutorily required. Id. at 637. [Thus, the Court concluded that it had jurisdiction to grant relief in the form of notice to eligible recipients about the enhanced benefits.]

The District Court eventually certified the class, and, in April 2017, granted summary judgment for the plaintiffs on their Equal Protection claim . . . [because] OPM, with no rational basis, had treated retired nurses differently by providing some with notice of their rights [but not others. The Court also allowed discovery on the Due Process claim to proceed]. . . . In light of those rulings, the District Court ordered [counsel for all parties to file a joint status report detailing the procedure for identifying and giving class and remedial notice to class members, and to submit an agreed-upon form of such notice. The District Court directed OPM to "withhold a portion of the gross amount of any retrospective payment(s), with the amount of such holdback to be set by further Order of Court, and . . . hold such monies in trust, pending disposition of them as may be later ordered by th[e] Court, for the payment of counsel fees and recoverable litigation costs." Gorgonzola v. McGettigan, No. 2:10-cv-01768, 2017 WL 1449789, at *14 (W.D. Pa. Apr. 21, 2017)]. . . . [T]he District Court [thereafter] issued another order directing OPM to "hold back" 30% of any retrospective payments to annuitants for a possible future attorneys' fee award [(the "Holdback Order")].

Gorgonzola, 782 F. App'x at 209-11 (footnotes and emphasis omitted).

The parties then submitted multiple joint status reports over a period of two years

4

that: (1) included lists of class members and (2) proposed contents of notices to them.[1]

Several of the joint status reports represented to the District Court that OPM would "issue decisions . . . to notify [recipients] of the results of OPM's file review and, if they are eligible, recalculation." JA 1012 n.3, **1081-82 n.4, 1126 n.4**. The parties' proposed class notices included similar representations. Each proposed notice contained language that represented that OPM would: (1) review the recipient's file to determine if the recipient was eligible for a recalculation, (2) recalculate her benefits if warranted, (3) send the recipient the agency's decision concerning the benefits, and (4) issue any owed benefits to the recipient, subject to the Holdback Order.[2] **JA 1018, 1156 (List 1); 1088-89 (List 2); 1024, 1171 (List 3); 1126, 1132-3 (List 4).** The District Court neither required nor requested these representations be included in the notices.

The District Court reviewed the proposed language and issued orders that approved, with minor changes, the parties' proposed notices and directed that they be

---

[1] The class members were identified in four lists: (1) "A list of all active federal annuitants who retired between April 7, 1986, and January 23, 2002, (or their survivor annuitants) who had worked part time at the VA before April 7, 1986"; (2) "A list of all active federal annuitants who retired between April 7, 1986, and January 23, 2002, and may have worked part time at the VA before 1972"; (3) "A list of all beneficiaries of deceased or survivor annuitants who had received annuities based on qualifying part-time VA work"; and (4) "A list of all beneficiaries of deceased annuitants who may have worked part time at the VA before 1972." Gorgonzola, 782 F. App'x at 211 (emphasis omitted).

[2] Those on Lists 2, 3, and 4 were directed to submit a form requesting action. Those on List 1 were not required to take any action. All notices informed the recipient that any disputes about recalculation could be appealed to the MSPB. **JA 1021, 1036, 1067, 1091, 1108, 1135.**

sent to class members (the "Notice Orders").[3] **JA 134-40.**

OPM appealed the first two Notice Orders and the Holdback Order. While the appeal was pending, OPM, contrary to the representations in the class notices, (1) informed the class representatives that it "would not voluntarily make recalculated annuity payments if there were any conditions imposed on its ability to make those payments," referring to the Holdback Order, (2) noted that it had "consistently maintained" this position, and (3) explained it was working to be "in a good position to pay recalculated annuities and benefits" following resolution of the appeal. JA 1151.

We eventually dismissed the appeal, holding (1) OPM's appeal of the Notice Orders was moot because the notices had already been sent to the class and (2) the Holdback Order was not an injunction subject to interlocutory review. Gorgonzola, 782 F. App'x at 212. Thereafter, OPM told the class representatives that it had "not yet decided if it [would] begin paying Class-members," and confirmed that, at that point, no one had been paid. JA 1153. In response, the class representatives filed a motion for an All Writs Act injunction or mandamus relief, seeking an order directing OPM to issue partial payments to eligible class members, pursuant to the language included in the notices sent to the class. **JA 1136-46.** OPM responded by filing a motion to modify or vacate the Holdback Order. **JA 1267-68.**

The District Court denied OPM's motion, granted the class representatives'

---

[3] Six Notice Orders were issued rather than four because the parties eventually proposed two supplemental lists for List 3.

motion, and issued an order ("March 2022 Order") that required OPM to "take no actions that [would] in any manner interfere with or impede the prompt and immediate conduct and conclusion of each and every action" set forth in the court-approved notices, "including but not limited to" that OPM "will review files, determine eligibility, issue eligibility decisions, recalculate annuities for Class members whom OPM determines are eligible for recalculation, adjust annuities prospectively, and pay any retroactive benefits that OPM calculates are due, all subject to th[e] Court's Holdback Order."  JA 3-4.

OPM appeals.  **JA 1-2.**

## II[4]

### A[5]

We first examine whether the District Court has original jurisdiction over this case.[6]  We conclude it does.  Although the CSRA provides OPM exclusive authority to

---

[4] We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

[5] "We . . . exercise plenary review over challenges concerning subject matter jurisdiction."  United States v. Apple MacPro Comput., 851 F.3d 238, 244 (3d Cir. 2017). We review a court's authority to issue an injunction under the All Writs Act de novo and its decision to issue such an injunction for abuse of discretion.  Grider v. Keystone Health Plan Cent., Inc., 500 F.3d 322, 328 (3d Cir. 2007).

[6] We use the phrase "original jurisdiction" to refer to matters over which federal courts have federal subject matter jurisdiction due to either federal question, 28 U.S.C. § 1331, or diversity jurisdiction, 28 U.S.C. § 1332, and "subject matter jurisdiction" to encompass both original jurisdiction and ancillary, pendent, and supplemental jurisdiction.  See, e.g., Bryan v. Erie Cnty. Office of Child. & Youth, 752 F.3d 316, 321 (3d Cir. 2014) (noting that the district court had "original jurisdiction" over the action because it had federal question jurisdiction and stating that "the limits of a court's original jurisdiction do not define the limits of the court's subject matter jurisdiction" in the context of ancillary jurisdiction).

adjudicate claims for benefits, its grant of exclusive jurisdiction does not cover notice claims, like those here, and thus the District Court had original jurisdiction to issue the Notice Orders. In reaching this conclusion, we consider whether Congress intended for the administrative process set forth in the CSRA to be the exclusive means for securing the notice relief sought here. See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477, 489 (2010) (observing that "[g]enerally, when Congress creates procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive" (internal quotation marks omitted)). Such an intent must be "fairly discernible in the statutory scheme." Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207 (1994) (quoting Block v. Cmty. Nutrition Inst., 467 U.S. 430, 351 (1984)); see also Elgin v. Dep't of Treasury, 567 U.S. 1, 9-10 (2012). The CSRA does not reveal such an intent.

The CSRA's language and structure make clear that it covers individual benefit determinations, but it does not vest OPM with exclusive authority to address a claim for notice. The statute's reference to OPM's adjudication of claims, 5 U.S.C. §§ 8347(b), 8461(c), indicates "a single act rather than a group of decisions or a practice or procedure employed in making decisions." McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 492 (1991). Further, the availability of an MSPB appeal for "an administrative action or order affecting the rights or interests of an individual," 5 U.S.C. §§ 8347(d)(1), 8461(e)(1), demonstrates that administrative review applies to the "denial of an individual [claim]," McNary, 498 U.S. at 492, rather than "general collateral challenges

to unconstitutional . . . policies," id. Thus, because a request for notice to a group of retirees about potential benefits is not an individual claim for benefits, the CSRA does not give OPM exclusive jurisdiction to address such a claim.[7]

We may also presume that Congress did not intend to limit district court jurisdiction where (1) "a finding of preclusion could foreclose all meaningful judicial review" of a plaintiff's claims; (2) "the suit is 'wholly collateral to [the agency's] review provisions'"; and (3) "the claims are 'outside the agency's expertise.'" Elgin, 567 U.S. at 15 (quoting Free Enter. Fund, 561 U.S. at 489). The application of these factors allows us to presume that Congress did not deprive the District Court of jurisdiction to grant the notice relief here.

First, there was no avenue for class members to meaningfully pursue their notice claims under the CSRA's administrative review scheme because it is not a claim for benefits. 5 U.S.C. § 8347(d)(1). Thus, concluding that the CSRA precluded such a class

---

[7] Allowing the notice claims to proceed in federal district court does not undermine the CSRA's purpose. The CSRA was designed "to replace an 'outdated patchwork of statutes and rules' that afforded employees the right to challenge . . . agency actions in district courts across the country," which "produced 'wide variations in the kinds of decisions . . . issued on the same or similar matters' and a double layer of judicial review that was 'wasteful and irrational.'" Elgin, 567 U.S. at 13-14 (second omission in original) (quoting United States v. Fausto, 484 U.S. 439, 444-45 (1988)). Because the notice claims would never even reach OPM, let alone the MSPB, and do not require the District Court to decide whether benefits should be paid, the Court's jurisdiction over the notice claims would not "reintroduce the very potential for inconsistent decisionmaking and duplicative judicial review that the CSRA was designed to avoid," nor would it "create the possibility of parallel litigation regarding the same agency action before the MSPB and a district court." Id. at 14.

notice claim from proceeding "could foreclose all meaningful judicial review" of a claim predicated on a complaint that OPM failed to notify beneficiaries of a benefit.[8] Elgin, 567 U.S. at 15 (quoting Free Enter. Fund, 561 U.S. at 489); see Semper v. Gomez, 747 F.3d 229, 242 (3d Cir. 2014) ("[A] federal employee who could not pursue meaningful relief through a remedial plan that includes some measure of meaningful judicial review has the right to seek equitable and declaratory relief for alleged constitutional violations in a 'federal question' action filed pursuant to [28 U.S.C.] § 1331.").

Second, the notice claims are "wholly collateral" to the CSRA scheme. Free Enter. Fund, 561 U.S. at 489 (quoting Thunder Basin, 510 U.S. at 212). The CSRA sets forth a scheme for evaluating an individual's claim for benefits. The District Court's provision of notice to the class does not implicate that process because it does not "have the practical effect of also deciding [a] claim[] for benefits on the merits." McNary, 498

---

[8] MSPB regulations permit "class appeals," which allow for employees to "file an appeal as representatives of a class of employees," 5 C.F.R. § 1201.27, but this is an inadequate avenue for the type of relief sought here. The MSPB "class appeal" is actually a consolidation of individual appeals from OPM decisions that involve the same issue. 5 C.F.R. § 1201.27(b) (indicating that the regulation applies to a consolidation of individual appellant claims rather than absent class members, noting that if a judge denies a request for a class appeal, "the appellants affected by the decision may file individual appeals"). The class members in this case had not received OPM decisions because they were unaware that they even had a claim to make. For the same reason, they would not have known to appeal to the MSPB or ask the MSPB to waive the exhaustion requirement that requires that they first present their claim to OPM. See, e.g., Wassenaar v. OPM, 55 M.S.P.R. 517, 521 (1992) (noting that the MSPB did not have "jurisdiction over the absent putative class members" because the appellant "ha[d] not asserted that other members of the putative class ha[d] exhausted administrative remedies and received a reconsideration decision from OPM"), rev'd on other grounds, 21 F.3d 1090 (Fed. Cir. 1994).

U.S. at 495. Indeed, the District Court dismissed the class's request that it grant such relief and its notices did not come with any finding that class members were actually entitled to any benefits.

Finally, the notice claims are outside OPM and the MSPB's "competence and expertise." Free Enter. Fund, 561 U.S. at 491. OPM and MSPB have expertise in determining entitlement to benefits. A request to ensure a group of retirees are notified about these benefits "do[es] not require technical considerations of [OPM] policy." Id. (internal quotation marks omitted). Rather, the notice claims present "standard questions of [constitutional] law, which the courts are at no disadvantage in answering." Id.

Thus, the District Court had original jurisdiction over the notice claims.

B[9]

We next examine whether the District Court abused its discretion in issuing the March 2022 Order. See Adams v. United States ex rel. McCann, 317 U.S. 269, 273 (1942). As explained below, the District Court had the authority to issue the order under Rule 23 and did not need to rely on the All Writs Act or ancillary jurisdiction. All Writs Act relief is appropriate if there are no adequate alternative remedies available. See Clinton v. Goldsmith, 526 U.S. 529, 537-38 (1999). Similarly, a court may exercise ancillary jurisdiction over matters "otherwise beyond [its] competence" that are "incidental to other matters properly before [it]." Kokkonen v. Guardian Life Ins. Co. of

_____

[9] Judge Bibas declines to join this section of the opinion, as he would hold that neither the All Writs Act nor Rule 23 justify the March 2022 Order.

11

Am., 511 U.S. 375, 378 (1994).  Here, Rule 23 itself provides a basis for relief so we need not rely on either of these sources of relief here.[10]

Indeed, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."  Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981).  Among other things, "district courts must closely monitor the notice process and take steps to safeguard class members from . . . misleading communications from the parties or their counsel." In re Cmty. Bank of N. Va., 418 F.3d 277, 310 (3d Cir. 2005) (internal quotation marks omitted); see also In re NFL Players' Concussion Inj. Litig., 923 F.3d 96, 109 (3d Cir. 2019) (holding that the All Writs Act and Rule 23 gave the district court the "authority to enjoin behavior by third parties to the extent necessary to effectuate and preserve the integrity of its prior orders"); cf. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 354 n.21 (1978) ("The Advisory Committee apparently contemplated that the court would make orders drawing on the authority of [Rule 23(d)] in order to provide the notice required by Rule 23(c)(2).").  Thus, the District Court had an obligation to ensure the notices were accurate, and Rule 23 provided it with the authority to enter orders to fulfill

---

[10] In addition, the District Court's authority under the All Writs Act differs from its ancillary jurisdiction.  The All Writs Act "does not itself confer any subject matter jurisdiction, but rather only allows a federal court to issue writs in aid of its existing jurisdiction," Apple MacPro, 851 F.3d at 244 (internal quotation marks omitted), whereas ancillary enforcement jurisdiction allows a court to exercise jurisdiction over matters "incident to the disposition of a dispute properly before it," Butt v. United Bhd. of Carpenters & Joiners of Am., 999 F.3d 882, 887 (3d Cir. 2021).

this obligation.

Based on the language in the notices, a reasonable recipient would believe that OPM has been and is reviewing her file, recalculating her benefits, and, if warranted, tendering annuity payments. After the District Court issued the notices, however, OPM told the Court that it would not take any of the review, recalculation, or payment actions it represented in the notices, thereby making the notices misleading.[11] Because of OPM's conduct, the District Court had to act so that the class was not deceived. The March 2022 Order ensured that the class could rely on the parties' jointly proposed language for the class notices, which explained what the class member is required to do and set forth the actions OPM said it would take. See NFL, 923 F.3d at 110; see also In re Baby Prods. Antitrust Litig., 708 F.3d 163, 180 (3d Cir. 2013) (noting that district courts are required to ensure that class notices issued under Rule 23(e) satisfy the requirements of due process, in particular that a notice should "contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights"); Erhardt v. Prudential Grp., Inc., 629 F.2d 843, 846 (2d Cir. 1980) ("It is the responsibility of the court to direct the 'best notice practicable' to class members, and to safeguard them from unauthorized, misleading communications from the parties or their counsel. Unapproved notices to class members which are factually or legally incomplete,

---

[11] At oral argument, OPM represented that it has since reviewed some of the files for those class members on List 1 and made recalculations and payments to eligible recipients despite its view that the District Court lacked jurisdiction and its objection to the Holdback Order.

13

lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice." (citation omitted)); cf. Fed. R. Civ. P. 23(d)(2) advisory committee's note to 1966 amendments ("Notice is available fundamentally for the protection of the members of the class or otherwise for the fair conduct of the action . . . ." (internal quotation marks omitted)).  The March 2022 order remedied any chance that the class could be misled.

An order under Rule 23 "should be restricted to the minimum necessary to correct the effects of improper conduct under Rule 23," NFL, 923 F.3d at 109, and therefore should be "the narrowest possible relief which would protect the respective parties," id. (quoting Coles v. Marsh, 560 F.2d 186, 189 (3d Cir. 1977)).  While the District Court could have directed OPM to notify the recipients that OPM has refused to review the files and inform each class member to file a claim for benefits with OPM, this relief would not "protect the respective parties," id., or "correct the effects of [OPM's] improper conduct," id.  A reasonable class member who received such an amended notice would wonder why she should file a claim with OPM when, in the same notice, the member would be told that OPM said it would not act on the claim.  This type of notice would cause confusion among many of these elderly class members, who might think filing a claim would be a futile exercise.  Thus, doing anything less than requiring OPM to fulfill the representations it made, and to do that which it is legally required, would not correct the impact of OPM's improper conduct.  The District Court's remedy was therefore the minimum necessary to protect the class.

14

The District Court thus acted within its discretion in issuing the March 2022 Order.[12]

C

OPM cannot use its appeal of the March 2022 Order to challenge the District Court's order granting summary judgment to the class on its equal protection claim. First, the order embodying this ruling was not a final order and thus we lack jurisdiction to review it. Second, unlike its repeated challenges regarding the merits of the Holdback Order in opposition to the All Writs Act motion, **see D. Ct. ECF No. 441, at 1-3,** OPM made no mention of the equal protection ruling in its opposition to the motion**, see D. Ct. ECF No. 441**. Thus, OPM's arguments based on the equal protection ruling are waived in the context of this appeal. DIRECTV, Inc. v. Seijas, 508 F.3d 123, 125 n.1 (3d Cir. 2007) ("It is well established that arguments not raised before the District Court are waived on appeal."). Finally, review under the doctrine of pendent appellate jurisdiction is not warranted because the equal protection ruling and the March 2022 Order do not present the same or intertwined issues and our decision not to review the equal protection ruling does not impede our review of the March 2022 Order. O'Hanlan v. Uber Techs.,

_____

[12] To be clear, our ruling requires OPM to fulfill its representations concerning review, recalculation, and payment. Our ruling should not be read to mean that the District Court could have ordered such actions in the first instance. In fact, the Court correctly dismissed the portions of the FAC that sought such specific relief. Our ruling instead endorses the Court's order directing OPM, a government agency, to fulfill its years' long and frequent representations to the Court that it would perform tasks that it acknowledged it is legally obligated to do.

Inc., 990 F.3d 757, 765 (3d Cir. 2021). For these reasons, OPM's appeal of the equal protection ruling is dismissed.

D

OPM also challenges the Holdback Order, but we lack appellate jurisdiction to review that interlocutory order. We have previously held that the Holdback Order is not an injunction reviewable on interlocutory appeal. Gorgonzola, 782 F. App'x at 213. Moreover, a nonfinal award of attorneys' fees that has yet to determine the fee amount is not an appealable injunction. See Paeco, Inc. v. Applied Moldings, Inc., 562 F.2d 870, 879–80 (3d Cir. 1977). Finally, an unappealable order does not become appealable simply because it was repeated in a later, appealable order. See CFTC v. Walsh, 618 F.3d 218, 224-25, 225 n.3 (2d Cir. 2010) (declining to exercise jurisdiction to review an unappealable temporary restraining order even though the court had jurisdiction to review a later order converting the restraining order into a preliminary injunction).

For these reasons, we again dismiss OPM's interlocutory appeal of the Holdback Order.

III

For the foregoing reasons, we will affirm in part and dismiss in part.[13]

---

[13] OPM also argues that the March 2022 Order is impermissibly vague because it fails to "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). The March 2022 Order directs OPM to live up to its representations and describes in detail the actions OPM told the Court in its status reports and proposed notice language that it would take, "including but not limited to . . . review[ing] files, determin[ing] eligibility,

16

issu[ing] eligibility decisions, recalculat[ing] annuities for Class members whom OPM determines are eligible for recalculation, adjust[ing] annuities prospectively, and pay[ing] any retroactive benefits that OPM calculates are due, all subject to [the] Court's Holdback Order." JA 4. This is hardly the type of "[b]road, non-specific language that merely enjoins a party to obey the law or comply with an agreement" that would fail to provide fair notice. Louis W. Epstein Fam. P'ship v. Kmart Corp., 13 F.3d 762, 771 (3d Cir. 1994).

OPM further argues that there was no basis for granting the All Writs motion because "[t]he notices do not set forth any time limits for OPM's actions . . . ." Appellant Br. at 41 n.3. However, absent a stay, which OPM has not sought, a party is required to comply "promptly" with "all orders and judgments of courts." United States v. Stine, 646 F.2d 839, 845 (3d Cir. 1981) (quoting Maness v. Meyers, 419 U.S. 449, 458 (1975)).

Regardless, OPM's recalcitrance has never been predicated on a lack of clarity.